Estate of Clair S. Kauffman, Deceased, National Bank & Trust Company of Central Pennsylvania, Executor v. Commissioner.
Estate of Kauffman v. Commissioner
Docket No. 2207-67.
United States Tax Court
T.C. Memo 1969-20; 1969 Tax Ct. Memo LEXIS 273; 28 T.C.M. (CCH) 78; T.C.M. (RIA) 69020; January 30, 1969, Filed Elmer M. Morris, for the petitioner. Giles J. McCarthy, for the respondent. 79 TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined an addition to the Federal income tax of Clair S. Kauffman under section 6653(b) [1] for the taxable year ending December 31, 1963 in the amount of $13,564.35. Petitioner had conceded and paid the underpayment on which the addition to tax for fraud is predicated before respondent issued the deficiency notice herein. Thus, the sole issue in this case is whether Kauffman fraudulently underpaid his income tax for 1963. Findings of Fact Most of the facts have been stipulated and are found accordingly. Petitioner is the executor of the Estate of Clair S. Kauffman, who died on September 4, 1964, and *274 had its principal office herein in York, Pennsylvania, at the time of the filing of the petition. Clair S. Kauffman filed his Federal income tax return for the calendar year 1963 with the district director of internal revenue in Philadelphia, Pennsylvania. At the beginning of 1963, Kauffman owned 4,800 shares of stock of the Drovers and Mechanics National Bank of York, Pennsylvania (hereinafter referred to as Drover). In June 1963, Kauffman agreed to sell his Drover stock for a total price of $160,000. He insisted that the purchaser pay him currency in the form of thirtytwo $5,000 bills and give him a written receipt reciting a sales price of $120,000, stating that he did not want his wife to know how much money he had. The sale took place on July 16, 1963. Kauffman placed the 32 bills in his safetydeposit box. He used 22 of these bills to make deposits in his checking account as follows: Date
Amount deposited
August 22, 1963,
$25,000
September 16, 1963
35,000
October 14, 1963
50,000
The remaining 10 bills were found in the box after his death. During the period October 15, 1963 to July 21, 1964, Kauffman opened an account in each of ten different *275 savings and loan institutions in California, depositing $10,000 in each account by means of checks drawn on his checking account. Kauffman's 1963 income tax return was prepared by a certified public accountant who had also prepared Kauffman's return for the previous year. In February 1964, the accountant received from Kauffman a pencilled statement of income and expenses for 1963. This statement did not indicate the sale of the Drover stock. Between February 1964 and June 12, 1964, the accountant had no personal contact with Kauffman, although Kauffman wrote the accountant on March 7, 1964, suggesting that the accountant might wish to meet with him "for questioning"; on or about March 13, 1964, the accountant phoned Kauffman and found that he had gone on vacation; the accountant on March 14 received some additional information by letter from Kauffman, who again suggested that he and the accountant should talk; and, after Kauffman returned from vacation, the accountant tried several times, but unsuccessfully, to reach him by telephone. The accountant was at no time furnished with information as to the sale of the Drover stock. After obtaining a 90-day extension of the time for filing, *276 the accountant prepared the return from Kauffman's notes and mailed it to him. Kauffman signed the return on or about June 10, 1964; it was filed on June 12, 1964. As filed, the return did not show the longterm capital gain of $103,395.79 that Kauffman had realized from the sale of the Drover stock. It did show a capital gain of $85,360.86 from the installment sale of other stock. The deductions were itemized and included such minor items as a $1.00 contribution to "Jehovah Witnesses" and $6.80 for a "med identification tag." The state of Kauffman's health during the periods relevant herein was extremely poor. At least since 1961, he had been suffering from emphysema, a debilitating and enervating disease, which is incurable and becomes increasingly serious with the passage of time. The disease, however, does not medically impair mental processes. By 1962, the disease began to affect Kauffman's blood circulation. He died on September 4, 1964. Kauffman had become legally separated from his wife, under a support order, more than 15 years before he died. His relations with his wife were extremely bad. He was obsessively unwilling to pay support. During the 11 years preceding his *277 80 death, he filed four different petitions seeking a reduction in the support payments. During the same period, ten attachments were issued against him in connection with the support order, and he was arrested eight times in connection therewith. His will purported to exclude his wife from his estate. Opinion The decedent, Kauffman, failed to report a conceded long-term capital gain of $103,395.79 from the sale of stock on his income tax return for 1963. The sole issue is whether the addition to tax for fraud should be imposed under section 6653(b). The burden of proof is upon the respondent (section 7454(a)) and he must prove fraud by clear and convincing evidence. E.g., . It is axiomatic that direct proof of fraud is seldom possible and that generally a finding of fraud must be based on the taxpayer's conduct in relation to the underlying transactions. See . Indirect evidence will suffice. See Essential to respondent's case is sufficient proof that the underpayment of tax was "due to fraud" existing at the time petitioner filed his *278 return. , affirmed per curiam (C.A. 6, 1957); cf. . In determining the existence of the proscribed purpose we may, of course, consider the pattern of a taxpayer's conduct prior to the filing of the return but, in the final analysis, we must be satisfied that such purpose permeated the return itself. There is no doubt that a substantial item of income was omitted from Kauffman's return and that there was a substantial underpayment of tax. But this does not per se constitute fraud. E.g., (C.A. 5, 1968), affirming a Memorandum Opinion of this Court. Although there is considerable plausibility to the claim that Kauffman's motivation was to deceive his wife, still he could easily have also intended to deceive the tax authorities. See , affirmed on this issue sub nom. (C.A. 9, 1958); ; . On the *279 other hand, that a tax fraud motive can be present along with a motivation arising out of Kauffman's marital difficulties does not require the conclusion that the tax fraud motive was present. We also note that Kauffman was seriously ill with a disease that sapped his energy. Under such circumstances, he may have had a tendency to overlook or be careless about matters which he considered of peripheral importance. We are not, however, convinced that Kauffman's illness explains everything, as petitioner would have us conclude. At the same time, though our doubts as to the effect of Kauffman's illness may undermine the strength of petitioner's contention, they cannot justify respondent's claim that therefore we must conclude that fraud has been proven. Respondent relies heavily on the fact that Kauffman asked for a written receipt reciting a price of $40,000 less than the true price and demanded payment in $5,000 bills. But the false receipt would have greater probative force if Kauffman had reported the sale at the fictitious price recited therein. It becomes equivocal when the sale is not reported at all, particularly when the evidence indicates that the false receipt was related *280 to Kauffman's phobia regarding his wife's financial demands upon him. Similarly, although the use of currency in a transaction where a check would normally be used might well suggest fraud (see , this element has less probative effect where large bills of limited supply are used. Five thousand dollar bills are rare indeed and highly likely to excite attention.[2]
We also note that in the same taxable year (1963) Kauffman deposited the bulk of these bills in his regular checking account and began the process of opening ten savings accounts by means of $10,000 checks drawn thereon. Such a course of conduct substantially increased the ease with which the transaction could be 81 discovered and is inconsistent with the intent to conceal which so often underlies the fraudulent tax motive. This is a strange and bothersome case. Aside from the accountant whom petitioner called as a witness, we were favored with no live testimony. *281 [3] While we recognize that respondent was laboring under a severe handicap due to Kauffman's death, the fact remains that we did not have the usual opportunity to make judgments as to credibility. Cf. . Kauffman's conduct may, as respondent contends, have been bizarre. Certainly it was very suspicious. But neither bizarreness nor suspicion can be equated with a fraudulent return. We think that respondent has failed to carry his burden of proof. Accordingly, we hold petitioner is not liable for the addition to tax under section 6653(b). Decision will be entered for the petitioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. On July 31, 1963, it appears that there were a total of 555 such bills in circulation. United States Department of the Treasury, Circulation Statement of United States Money (July 31, 1963).↩
3. The stipulation did recite what Kauffman's doctor and his lawyer who handled the sale of the Drover stock would have testified, if called.↩